UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:25-cv-22706

AT LAW AND IN ADMIRALTY

MARIA PIMENTEL,

Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

Defendant.

_______________________________________/

**COMPLAINT FOR DAMAGES**

The Plaintiff MARIA PIMENTEL hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

2. **THE PLAINTIFF.** The Plaintiff is *sui juris* and is a resident and citizen for purposes of diversity of jurisdiction of the state of California.

3. **THE DEFENDANT.** The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE is incorporated in the country of Panama and does business in the State of Florida, and at all times material hereto was and is headquartered in Miami-Dade County, Florida. For purposes of diversity of citizenship, Carnival is a citizen of the country of Panama.

At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION.** The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF INCIDENT.** This incident occurred on June 28, 2024.

8. **LOCATION OF INCIDENT.** This incident occurred onboard the cruise ship *Carnival Dream* while the ship was in navigable waters. Specifically, the Defendant allowed a large wet area to exist on a slippery-when-wet polished stone flooring on an enclosed area on the Promenade deck, deck 5, which caused the Plaintiff to slip and fall and suffer injuries.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DESCRIPTION OF INCIDENT.** Carnival chose to install a slippery-when-wet polished stone flooring on the enclosed area on the Promenade deck, deck 5. This flooring is in an area where passengers and crewmembers track in water from any one of the many spas (hot tubs) on the Lanai Promenade deck, deck 5, and spill drinks on a frequent basis on the enclosed floor. And Carnival chooses not to hire sufficient number of cleaners to have the floors clean and dry. On this day, there was a large area of water on the Promenade deck's enclosed area which was left unattended for an extended period of time. The Plaintiff herein, a passenger onboard the ship, walked through the area and slipped and fell on June 28, 2024, suffering permanent injuries.

11. **DUTIES OWED BY CARNIVAL.** Under the General Maritime Law, the Defendant Carnival owes to its passengers a duty to act reasonably under the circumstances. The circumstances are that Carnival owns and operates 29 cruise ships which include the *Carnival Dream*. The *Carnival Dream* is a part of the *Dream*-class cruise ships which includes the *Carnival Magic, and Carnival Breeze*. The *Carnival Dream* and other *Dream*-class ships were designed by or at the direction of Carnival's shoreside New Build Department and other shoreside departments. Carnival employs architects, designers, and engineers who direct, supervise and/or participate in the build of each Carnival ship. This ship as all the others was built under the constant supervision

of Carnival's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, Carnival has full access to the ship to inspect and to reject any aspect of the design or construction of the ship. Carnival maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances. Carnival has ultimate control because they participate in the design and because they are onsite during construction. Carnival also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for charges are not carried out Carnival can withhold payment. All of *Carnival Dream* class ships from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.

12. The *Carnival Dream* was delivered to Carnival as finished on September 17, 2009. Carnival has operated and maintained the ship continuously since that time. The *Carnival Dream* has a capacity for 3,700 passengers and 1,369 crew members.

13. On each and every one of *Carnival Dream* class ships there are doorways connecting the interior decks and the exterior decks which contain large spas on the ships. Hundreds if not thousands of passengers constantly and repetitively interchange between the exterior decks and the interior decks when using the various amenities that Carnival offers onboard its ships.

14. The circumstances are that *Carnival Dream* features multiple of these doorways on deck 5 which connect the interior Promenade deck, deck 5, and the exterior Lanai promenade deck, deck 5, which features large spas (hot spas). *Carnival Dream's* deck 5 is a high foot traffic and a passenger hub area. The Promenade deck, deck 5, has a lively atmosphere with a bubbly vibe featuring lounges, a candy shop, designer shops, Vegas style gambling casino, bars, and numerous dining options to suit different palates in its interior deck.

15. *Carnival Dream's* Lanai promenade, deck 5, wraps around the Promenade deck, deck 5. On the Lanai promenade, deck 5, passengers can lounge on the exterior deck's sunbathing chairs, walk, jog, or relax on any of the four large hot tubs while enjoying ocean breeze and ocean views.

16. The circumstances are that as a result of *Carnival Dream's* deck 5 plan, passengers continuously track water from the Lanai promenade, deck 5, hot spas into the Promenade deck, deck 5. Carnival knows of the dangerous condition because of Carnival's extensive knowledge of slip and falls on the subject deck and on other cruise ships of Carnival on the same deck. Carnival placed a caution "slippery when wet" sign which is close to the area but on the exterior Lanai Promenade deck, deck 5, so that a person approaching the area on the enclosed Promenade deck, deck 5, cannot see the sign until it is too late. In addition, Carnival knows that passengers are not aware that passengers constantly track water into the Promenade deck, deck 5, from large hot tubs on Lanai Promenade, deck 5. Based on these facts, Carnival's placement of the "slippery when wet" sign near the area is not reasonable under the circumstances. This is a repetitive, ongoing situation which has been happening for as long as Carnival has operated not only this cruise ship but all of its other cruise ships.

17. Another circumstance is the fact that on the Lanai promenade, deck 5, passengers often wear sunscreen and/or suntan lotion which also drips and tracks with water onto the interior walkways, making the wet and slippery walkways more slippery. Carnival also knows that passengers often transport food and/or drinks while exploring and transitioning through different areas of the ship. Carnival knows or should have known that passengers repetitively and constantly spill food and/or drinks onto its walkway floors. For those reasons, Carnival trains its crew members to inspect and maintain its walkway floors on a regular basis. This is a repetitive, ongoing situation which has

been happening for as long as Carnival has operated not only this cruise ship but all of its other cruise ships.

18. An additional circumstance is the fact that Carnival knows that accumulations of wet areas blend in with the floors of its interior walkways. Carnival knows that passengers may not know how slippery its floors can be, let alone with large accumulations of water. The large area of water were Plaintiff slip and fell indicates that people tracked in the water over time, probably an hour prior to the Plaintiff's slip and fall onboard *Carnival Dream* on June 28, 2024. Further, after the slip and fall incident the Plaintiff saw a crewmember standing in the immediate vicinity at the time that the plaintiff was walking through the area which crewmembers were in a position to see the wetness or could have inspected for the wetness and could have dried it up or warn the Plaintiff of the dangerous condition. Carnival knows the wet shiny floors are not an open and obvious hazardous condition for passengers. For those reasons, Carnival requires its crew members to warn its passengers of the dangerous condition. Based on these facts, Carnival or its crew did not act reasonably under the circumstances.

19. Despite the fact that Carnival chose the slippery-when-wet stone flooring in areas subject to tracking in water and spills, Carnival or its employees did little or nothing to address these dangers. First, Carnival or its crew failed to inspect and/or maintain and allowed an extremely large wet area of water which was tracked over time by bathers to remain on the Promenade, deck, deck 5 onboard *Carnival Dream* on June 28, 2024. Second, Carnival or its crew failed to warn Plaintiff of the dangerous condition on Promenade deck, deck 5. Third, Carnival poorly or unreasonably trained its crew in order to ensure reasonably safety for is passengers onboard *Carnival Dream*. Fourth, Carnival chose not to hire more cleaning staff to keep the slick, polished stone floors clean and dry.

20. **NOTICE: PRIOR SIMILAR INCIDENTS.** Prior similar incidents show evidence that Carnival had notice of the dangerous condition here. Carnival documents slip and fall in various ways which may include prior shipboard safety meetings; work orders; electronic communication; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Examples of similar prior incidents known to date include the following incidents involving passengers who slipped and fell on wet slippery or foreign or transitory substance on Carnival's ships under the same and/or similar circumstances as Plaintiff:

a. Dennis Weiner was a passenger aboard the *Carnival Valor* on August 16, 2010. Weiner was injured when he slipped on liquid which had accumulated on the shiny floors near the coffee shop on the Promenade deck. Weiner filed a lawsuit as a result of this incident. *Weiner v. Carnival Cruise Lines, Case No. 11-cv-22516.*

b. Marjorie Cogburn was a passenger on *Carnival Ecstasy* on May 26, 2019. Marjorie Cogburn was injured when she slipped and fell on the unreasonably slippery interior flooring on the Promenade deck that had water and/or another liquid substance on it. Cogburn filed a lawsuit as a result of this incident. *Cogburn v. Carnival Corporation, Case No. 1:20-cv-22166.*

c. Earlene G -Starkes was a passenger on *Carnival Magic* on January 4, 2019. Earlene G-Starkes was injured when she slipped and fell on a wet substance that was on the marble and/or polished granite floor on the Promenade deck. Barksdale-Starkes filed a lawsuit as a result of this incident. *Barksdale-Starkes v. Carnival Corporation, et al., Case No. 1:20-cv-22204.*

d. Nora Stricklan was a passenger on the *Carnival Dream* on January 18, 2020. Stricklan slipped, fell and was injured on the slippery flooring of the Lido Deck near Guys Burger Place. Stricklan filed a lawsuit as a result of this incident. *Nora Stricklan v. Carnival Corporation*, Case Number 1:20-cv-24887.

e. David Tutor was a passenger on the *Carnival Dream* on December 28, 2015. Tutor slipped, fell and was injured on the slippery floor of the Lido Deck in the Buffet area. *David Tutor v. Carnival Corporation*, Case Number 1:16-cv-23464-DPG.

f. Thomas Haynes was a passenger on the *Carnival Glory* on May 9, 2019. Haynes slipped, fell and was injured on a wet, foreign or transitory substance such as condensation on Deck 3. *Thomas Haynes v. Carnival Corporation*, Case Number 1:20-cv-21921-RNS.

g. *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090 (S.D. Fla. 2014) (court denied defendant's motion for summary judgment): Tammy Merideth was severely injured onboard the *Carnival Magic* on May 22, 2013. Merideth was eating breakfast at the self-service "Lido" restaurant on the aft deck of the M/S *Carnival Magic*, one of three similarly constructed "Dream Class" vessels operated by Carnival. As she stepped from a carpeted area to the tile floor, her foot lost traction, slipping out from underneath her and causing her to fracture her right knee and femur.

21. **NOTICE: THE SIZE OF THE SLIPPERY AREA.** Additional evidence that Carnival or its crew had notice of the dangerous condition here is shown by the size of the slippery substance. Moreover, Plaintiff saw another puddle of water in front of her when she was on the slippery-when-wet stone flooring which is evidence that the water had been tracked in over an extended period of time.

22. **NOTICE: THE LENGTH OF TIME THE DANGEROUS CONDITION EXISTED.** Additional evidence that Carnival or its crew had notice of the dangerous condition here is shown by the length of time that the condition existed. The large size of the wet area suggests that water had been tracked in over an extended period probably an hour providing ample opportunity for Carnival or its crew to identify and remedy the hazard.

23. **NOTICE: POLICY, TRAINING AND PROCEDURES.** Additional evidence that Carnival or its crew had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area that informs crew members the importance of inspecting and maintaining the flooring in a clean and dry condition as well as warning passengers of slippery foreign or transitory substance on its floors. These training programs include but are not limited to Carnival's "Own Your Own Spill" program, two-minute trainers, Carnival's Carnival College Program as well as its HESS MS Procedures which address slip and fall prevention, floor maintenance and provision of warnings regarding shipboard hazards. Carnival's training programs specifically train its crew members to inspect and maintain the subject area's carpeted and non-carpeted flooring in clean and dry conditions including mopping Carnival's floors. Carnival's training and procedures instruct crew members that slippery substances on its floors can cause passengers to slip and fall and get injured. Also, Carnival training and procedures require crew members to place wet floor signs on areas that become repetitively wet and/or are known to be slippery due to a foreign or transitory substance. Carnival's training and procedures instruct its crew that wet floor signs must remain in the area until the floors are dried and cleaned from any slippery foreign or transitory substance or after crew members have recently mopped the flooring. Carnival created these procedures for its crew because Carnival knows that without warnings passengers may not know or be able to perceive that its floors contain slippery substances. This shows that Carnival

knew or should have known slippery substances on the subject area are not an open and obvious condition.

24. **NOTICE: DESIGN, SELECTION OF MATERIALS AND/OR CONSTRUCTION.** Carnival designs, selects the materials, and constructs its ships including the location of shipboard common areas, carpeted and non-carpeted flooring materials, and overall architecture. Carnival participates with and controls the design, construction and selection of all materials installed on its ships. Carnival has contracts with the shipyard which allow Carnival the right to inspect the design plans, carpeted and non-carpeted flooring materials, and construction of its ships. Carnival may refuse payment, the ultimate control, should issues regarding design, selection of all materials and construction is not resolved to Carnival's satisfaction. Carnival approved and chose the design, selection of the carpeted and non-carpeted flooring materials and construction of all flooring on ships including the area of the Promenade deck, deck 5, and onboard the *Carnival Dream*. Carnival has chosen and/or allowed the installation of the carpeted and non-carpeted flooring materials in the area of the promenade deck, deck 5, and other areas throughout the Carnival fleet for years. These floor materials are also used in other areas of Carnival ships.

25. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Carnival's decks are escape routes that Carnival must maintain in a safe, clear, clean and dry condition. Upon information and belief, Carnival, at all relevant times, was aware of industry

safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

26. **NOTICE: CAUTION SIGNS.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that Carnival routinely posts caution signs. Carnival uses these caution signs in the area of the Promenade deck, deck 5, walkways and other areas of its ships to alert passengers of slippery substances on the floors. Carnival uses these cautions signs in the area of the Lanai, Promenade deck, deck 5, from which water is tracked onto the Promenade deck, deck 5. This is done in part because Carnival knows through years of experience including through the investigation of countless shipboard slips and falls, that if signs are not used passengers can and do slip and fall. Additionally, Carnival knows through years of experience including through the investigation of countless shipboard slip and falls that the degree of slipperiness of its shipboard floors as well as the presence of water or substances is not immediately apparent to passengers.

27. **NOTICE: CORRECTIVE ACTION.** Carnival knew or should have known about the dangerous condition because Carnival's crew members put up caution signs in the area and began mopping about 20-30 feet away shortly after Pimentel slipped and fell.

28. **NOTICE: CREW MEMBERS IN THE VICINITY.** Carnival knew or should have known about the dangerous condition as there were crewmembers in the vicinity of the subject area. There were crewmembers working nearby at the coffee shop and Bonsai Sushi Restaurant. A

crewmember nearby placed a caution sign after the Plaintiff fell. There was also a crewmember who was mopping in the hallway about 20-30 feet ahead.

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN**
**(Direct Liability for Negligence Under General Maritime Law)**

29. The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

30. This is an action against Carnival for its negligent failure to maintain the Promenade deck, deck 5, walkway floors in a reasonable safe condition onboard *Carnival Dream* on June 28, 2024.

31. **DUTIES OWED BY CARNIVAL.** Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff. Carnival's duties of care regarding maintaining the subject area include: (a) inspecting on a frequent and timely basis for wetness or a water accumulation on the slick, polished floor; (b) cleaning and drying wetness or a water accumulation on the slick, polished floor; (c) cordoning or blocking off any area on the slick, polished floor with wetness or a water accumulation; (d) hiring sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the flooring on the Promenade deck, deck 5, area onboard *Carnival's Dream* in a safe manner, including the subject area where the Plaintiff slipped and fell on June 28, 2024.

32. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

33. **CARNIVAL BREACHED ITS DUTIES.** Carnival breached its duties to maintain the glossy and slick flooring in the Promenade deck, deck 5, on the starboard side of the

vessel where the Bonsai Sushi Restaurant is located and near the doorway leading to and which is steps away from one of the large hot tubs on the Lanai promenade, deck 5, onboard *Carnival Dream* on June 28, 2024, where Plaintiff slipped and fell. Carnival breached its duties by failing to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, polished floor, (b) clean and dry wetness or a water accumulation on the slick, polished floor; (c) cordon or block off any area on the slick, polished floor with wetness or a water accumulation; (d) hire sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the slippery-when-wet-polished stone flooring on the Promenade deck, deck 5, area onboard *Carnival's Dream* where the Plaintiff slipped and fell on June 28, 2024.

34. **PROXIMATE CAUSE.** Carnival's failure to maintain the slippery-when-wet polished stone flooring in the subject area onboard the *Carnival Dream* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed for the large puddle of water to accumulate and remain on the slippery-when-wet polished stone flooring on the Promenade deck, deck 5. Had Carnival properly maintained and inspected the slippery-when-wet polished stone flooring in the subject area onboard the *Carnival Dream*, Plaintiff would have never slipped, fallen and been injured on *Carnival Dream* on June 28, 2024.

35. **DAMAGES.** As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the

future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO MAINTAIN**
**(Vicarious Liability for Negligence of Employees**
***Respondeat Superior* Under The General Maritime Law)**

36. The Plaintiff hereby adopts and re-alleges every each and every allegation in paragraphs 1 through 28, above.

37. This is an action against Carnival for its vicarious liability arising from the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed to inspect and/or maintain the slippery-when-wet polished stone flooring on the Promenade, deck 5, onboard *Carnival Dream* on June 28, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

38. **DUTIES OWED BY THESE CLEANING PERSONNEL.** Carnival personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of

Carnival's passengers arising from the employer-employee relationship between Carnival and its personnel. The cleaners or stewards who were assigned to this ship and to this Deck 5 area on the day of this fall had a duty to (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, polished floor, (b) clean and dry wetness or a water accumulation on the slick, polished floor; (c) cordon or block off any area on the slick, polished floor with wetness or a water accumulation, and other means.

39. Carnival's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet polished stone flooring in the subject area. Carnival's employees assigned to the subject area are part of a larger class of crewmembers on the housekeeping department which are commonly referred to as stewards or cleaners. Carnival's Assistant Housekeeping Manager and Housekeeping Manager scheduled, designated, assigned, instructed and/or directed stewards or cleaners to inspect and maintain the slippery-when-wet polished stone flooring on Deck 5, which area included but was not limited to the starboard side of the vessel where the Bonsai Sushi Restaurant is located and near the doorway leading to and which is steps away from one of the large hot tubs on the Lanai promenade, deck 5, onboard *Carnival Dream* on June 28, 2024.

40. The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block of areas on the slick, polished floor with wetness or a water accumulation or other means to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 23.

41. **THESE CLEANING PERSONNEL BREACHED THEIR DUTIES.** Carnival's stewards breached their duties to maintain the slippery-when-wet polished stone flooring in this area of the *Carnival Dream* on June 28, 2024. Specifically, the stewards who were assigned to that area of the slippery-when-wet polished stone flooring on that day failed to: (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024. Carnival's stewards or cleaners failed to inspect and/or maintain the area to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 23.

42. These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

43. **PROXIMATE CAUSE.** The failure of these Carnival cleaning personnel to inspect and/or maintain the flooring in the subject area onboard the *Carnival Dream* in a safe manner, proximately caused Plaintiff's injuries. These failures of inspection and maintenance allowed for the large puddle of water to accumulate and remain on the slippery-when-wet polished stone flooring in the Promenade deck, deck 5. Had Carnival's cleaning personnel properly maintained and inspected the slippery-when-wet polished stone flooring, Plaintiff would have never slipped, fallen and been injured on *Carnival Dream* on June 28, 2024.

44. **DAMAGES.** As a direct result of the active negligence of Defendant's cleaning personnel described above, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO WARN
### (Direct Liability for Negligence Under General Maritime Law)

45. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

46. This is an action against Carnival for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers onboard the *Carnival Dream*.

47. **DUTIES OWED BY CARNIVAL.** Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passengers. Carnival's duties of care includes warning passengers who come into the area of the slippery-when-wet polished stone flooring and of the presence of a water accumulation by (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Dream,* including the dangerous condition of the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024.

48. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

49. **CARNIVAL BREACHED ITS DUTIES.** Carnival breached its duties to warn Plaintiff of the dangerous conditions on the Promenade deck, deck 5, on the starboard side of the vessel where the Bonsai Sushi Restaurant is located and near the doorway leading to and which is steps away from one of the large hot tubs on the Lanai promenade, deck 5, onboard *Carnival Dream* on June 28, 2024, where Plaintiff slipped and fell. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to warn passengers who come into the area of the slippery-when-wet polished stone flooring and of the presence of a water accumulation by failing to (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn passengers of dangerous conditions onboard the *Carnival Dream,* including the dangerous condition created by the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024.

50. **PROXIMATE CAUSE.** Carnival's failure to reasonably warn Plaintiff of the dangerous conditions onboard the *Carnival Dream,* including the slippery-when-wet polished stone flooring on Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024, proximately caused the Plaintiff's injuries. Had Carnival reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the large puddle of water. Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Dream* on June 28, 2024.

51. **DAMAGES.** As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject

incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN**
**(Vicarious Liability for Negligence**
***Respondeat Superior* Under General Maritime Law)**

52. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

53. This is an action against Carnival for its vicarious liability for the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, onboard *Carnival Dream* on June 28, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

54. **DUTIES OWED BY THESE CLEANING PERSONNEL.** Carnival's personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of Carnival's passengers arising from the employer-employee relationship between Carnival and its cleaning personnel. The cleaners or stewards who were assigned to this ship and to this Deck 5 on the day of this fall had a duties to warn passengers who come into the area of the slippery-when-wet polished stone flooring and of the presence of a water accumulation included but is not limited to (a) posting warning signs, (b) placing physical barriers, (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Dream,* including the dangerous conditions of the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024.

55. Carnival's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring. Further, at all times material hereto, said crewmembers were employees of the Defendant and were part of the larger class of crewmembers on the housekeeping department and which are often referred to as stewards or cleaners. A Carnival's assistant housekeeping manager or supervisor scheduled, designated, assigned, instructed and/or directed the stewards or cleaners to warn passengers of dangerous conditions on the Promenade deck, deck 5, which area included but was not limited to the starboard side of the vessel where the Bonsai Sushi Restaurant is located and near the doorway leading to and which is steps away from one of the large hot tubs on the Lanai promenade, deck 5, onboard *Carnival Dream* on June 28, 2024.

56. The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 23.

57. **<u>THESE CLEANING PERSONNEL BREACHED THEIR DUTIES</u>.** Carnival's stewards or cleaners breached their duties to warn Plaintiff of the dangerous conditions on the Promenade deck, deck 5, on the starboard side of the vessel where the Bonsai Sushi Restaurant is located and near the doorway leading to and which is steps away from one of the large hot tubs on the Lanai promenade, deck 5, onboard *Carnival Dream* on June 28, 2024, where Plaintiff slipped and fell.

58. On the day of the incident Carnival's stewards or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of

the slippery-when-wet polished stone flooring in the area where Plaintiff fell. Carnival's stewards or cleaners failed to warn passengers who came into the area of the slippery-when-wet polished stone flooring and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means of warning of dangerous conditions of the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024. Carnival's stewards or cleaners failed to warn Plaintiff to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 23.

59. These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

60. **PROXIMATE CAUSE.** Carnival's steward or cleaner's failure to reasonably warn Plaintiff of the dangerous conditions on board the *Carnival Dream*, including the area of Promenade deck, deck 5, where Plaintiff slipped and fell on June 28, 2024, proximately caused the Plaintiff's injuries. Had Carnival's stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have walked onto the large puddle of water. Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Dream* on June 28, 2024.

61. **DAMAGES**. As a direct result of the active negligence of Defendant's stewards or cleaners, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical

treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT TRAINING OF PERSONNEL**

62. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

63. This is an action against Carnival for its negligent training of its shipboard crew members.

64. **DUTIES OWED BY CARNIVAL.** Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passenger. Carnival's duties of care includes but is not limited to: (a) teaching shipboard crew how to inspect for puddles; (b) teaching shipboard crew how frequently to inspect for puddles; (c) teaching crew how to properly record inspections which

ensure frequency of inspection is followed and/or maintained; (d) teaching shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching shipboard crew how to warn guests about wet slippery floors; (f) teaching shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching shipboard crew how to reasonably clean and dry floors in a safe condition; (h) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program; (k) teaching shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teaching shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation. Carnival's duties, as detailed above, extend to the slippery-when-wet polished stone flooring aboard the Carnival Dream, including the specific area where Plaintiff slipped and fell on June 28, 2024.

65. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

66. **CARNIVAL BREACHED ITS DUTIES.** Carnival breached its duties of care owed to Plaintiff and was negligent by failing to reasonably train its crew members to inspect, maintain, clean, dry and warn passengers of the dangerous conditions onboard the *Carnival Dream* including the subject area where Plaintiff slipped and fell on June 28, 2024. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to reasonably implement or operate its training programs by failing to: (a) teach shipboard crew how to inspect for puddles; (b) teach shipboard crew how frequently to inspect for puddles; (c) teach crew how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach shipboard crew how to warn guests about wet slippery floors; (f) teach shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach shipboard crew how to reasonably clean and dry floors in a safe condition; (h) each shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program; (k) teach shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance,

warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation. In doing so, Carnival failed to reasonably implement or operate its training programs described in paragraph 23 and incorporated herein.

67. At the time Plaintiff fell on the slippery-when-wet polished stone flooring on the Promenade deck, deck 5, the crew that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so. Because those crewmembers were not properly trained, Carnival failed to reasonably warn passengers like Plaintiff of the dangerous conditions on board the *Carnival Dream* including the area where Plaintiff slipped and fell on June 28, 2024. Because those crew were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

68. **PROXIMATE CAUSE.** Carnival's failure to properly train its crew members to implement or operate its training procedures proximately caused Plaintiff's injuries. Had Carnival reasonably implemented or operated its training programs onboard its ships including the *Carnival Dream* on June 28, 2024, the crewmembers would have inspected, cleaned, dried, and warned Plaintiff about the dangerous conditions, Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Dream* on June 28, 2024.

69. **DAMAGES.** As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning

capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT VI NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

70. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

71. This is an action against Carnival for its negligent design, construction and selection of the slippery-when-wet polished stone flooring in the subject area.

72. **DUTIES OWED BY CARNIVAL.** Carnival owes duties to exercise reasonable care under the circumstances for its passengers. Carnival's duties of care includes: (a) selecting materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic where there are spills and tracking in water from outside are expected and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships; (b)

designing and constructing all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable us by its passengers; (c) approving the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.

73. The circumstances are that Carnival owns and operates 29 cruise ships which include the *Carnival Dream*. The *Carnival Dream* is a part of the *Dream*-class cruise ships which includes the *Carnival Magic, and Carnival Breeze*. The *Carnival Dream* and other *Dream*-class ships were designed by or at the direction of Carnival's shoreside New Build Department and other shoreside departments. Carnival employs architects, designers, and engineers who direct, supervise and/or participate in the build of each Carnival ship. This ship as all the others was built under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, Carnival has full access to the ship to inspect and to reject any aspect of the design or construction of the ship. Carnival maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances. Carnival has ultimate control because they participate in the design and because they are onsite during construction. Carnival also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for charges are not carried out Carnival can withhold payment. All of *Carnival Dream* class ships from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.

74. Another circumstance is the fact that onsite construction managers, designers, architects, and engineers hired by Carnival know based on body of knowledge including education and on the field experience that selection of specific flooring surfaces which meet safety standards

must be selected in context of the area in which the flooring is to be installed and the intended use and/or foreseeable use of the area.

75. **<u>NOTICE</u>.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

76. Carnival knew or should have known that the subject area including the slippery-when-wet stone flooring it chose and installed on the deck floors including the Promenade deck, deck 5, on the *Carnival Dream* was unreasonably dangerous and slippery when wet.

77. Carnival knew or should have known of the dangerousness of the subject area including the slippery-when-wet stone flooring in the subject area since its installation on or about 2008.

78. **<u>CARNIVAL BREACHED ITS DUTIES</u>.** Carnival breached its duties of care owed to Plaintiff and was negligent by selecting, designing and/or constructing, approving, the materials installed on onboard the *Carnival Dream* including the subject area where Plaintiff slipped and fell on June 28, 2024. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to reasonably design and/or construct, select, approve the materials onboard the *Carnival Dream* by failing to: (a) select materials which include selecting a floor surface which is not suitable and safe for a high volume of foot traffic where there are spills and tracking in water from outside are expected and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships (b) design and construct all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable us by its passengers; (c) approving the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use. Carnival failed to select, design and/or construct and approve materials which complied with

industry standards. The design and/or materials Carnival chose, selected, approved of, and installed for the subject area on board the *Carnival Dream* was unreasonably dangerous.

79. **PROXIMATE CAUSE.** Carnival's negligent selection, design, construction, and approval of materials for the subject area on board the *Carnival Dream* proximately caused Plaintiff's injuries. Had Carnival properly designed, constructed and selected the subject area on board the *Carnival Dream,* Plaintiff would have never slipped, fallen and been injured on *Carnival Dream* on June 28, 2024.

80. **DAMAGES.** As a direct result of Defendant's negligent selection, design and/or construction and approval of materials, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject

incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

Respectfully submitted,

By: *s/ Elizabeth D. Carlin*
**JOHN H. HICKEY, ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**ELIZABETH D. CARLIN, ESQ.** (FBN 753521)
ecarlin@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
12150 SW 128th Court, Ste. 225
Miami, Florida 33186
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Counsel for the Plaintiff*