UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22706 -BLOOM/Elfenbein

MARIA PIMENTEL,

    Plaintiff,

v.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINE,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Dismiss Plaintiff's Complaint, ECF No. [7] ("Motion"). Plaintiff Maria Pimentel ("Plaintiff") filed a Response in Opposition to Defendant's Motion ("Response"), ECF No. [11], to which Defendant filed a Reply, ECF No. [16]. The Court has reviewed the Complaint, the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff filed his Complaint against Defendant under maritime law, asserting a claim for Negligent Failure to Maintain—Direct Liability (Count I), Negligent Failure to Maintain—Vicarious Liability (Count II), Negligent Failure to Warn—Direct Liability (Count III), Negligent Failure to Warn—Vicarious Liability (Count IV), Negligent Training of Personnel (Count V), and Negligent Design, Construction, and Selection of Materials. *See* ECF No. [1]. In the Complaint, Plaintiff alleges that Defendant is a cruise line company that "owned, and or operated the cruise ship on which the subject negligence occurred." *Id.* at ¶ 3. Defendant also employed the

crewmembers assigned to decks and public areas, including the crewmembers responsible for keeping the subject area dry and placing safety signage. *Id.* at ¶¶ 38, 42.

On or about June 28, 2024, Plaintiff was a passenger aboard the cruise ship *Carnival Dream* while the ship was in navigable waters. *Id.* at ¶¶ 8-9. On the Promenade Deck (deck 5) of the ship, there is an enclosed "slippery-when-wet polished stone flooring" area. *Id.* at ¶ 8. "This flooring is in an area where passengers and crewmembers track in water from any one of the many spas (hot tubs) on the Lanai Promenade deck [ ], and spill drinks on a frequent basis on the enclosed floor." *Id.* at ¶ 10. Passengers also "often wear sunscreen and/or suntan lotion which also drips and tracks with water on the interior walkways, making the wet and slippery walkways more slippery." *Id.* at ¶ 17.

On the date of the incident, "Defendant allowed a large wet area" to form on the stone flooring, "which was left unattended for an extended period of time." *Id.* Given the size of the wet area, Plaintiff estimates "that people tracked in the water over time, probably an hour prior" to the subject incident." *Id.* at ¶ 18. While Defendant "placed a caution 'slippery when wet sign [ ] close to the area," the sign was "on the exterior Lanie Promenade, deck 5," and therefore "a person approaching the area on the enclosed Promenade deck, [would not ] see the sign until it is too late." *Id.* at ¶ 16. Consequently, when Plaintiff walked through the stone flooring area on June 28th, she did not see the slippery when wet signage or the large wet area,[1] and as a result, slipped and fell, suffering permanent injuries. *Id.*

Shortly after the incident, "Plaintiff saw a crewmember standing in the immediate vicinity" of the wet slippery area who was "in a position to see the wetness or could have inspected for the

---

[1] While Plaintiff contends that she did not see the wet area where she slipped prior to stepping in it, Plaintiff alleges she "saw another puddle of water in front of her when she was on the slippery-when-wet stone flooring." ECF No. [1] at ¶ 21.

wetness and could have dried it up or warn[ed] the Plaintiff of the dangerous condition." *Id.* at ¶ 18. Additionally, there were other crewmembers who knew or should have known about the dangerous condition, including the "crewmembers working nearby at the coffee shop and Bonsai Sushi Restaurant," the "crewmember nearby [who] placed a caution sign after the Plaintiff fell," and the "crewmember who was mopping in the hallway about 20-30 feet ahead." *Id.* at 28.

According to Plaintiff, Defendant knew "or should have known that passengers repetitively and constantly spill food and/or drinks onto its walkway floors," and it knew "of the dangerous condition because of [Defendant]'s extensive knowledge of slip and falls on the subject deck and on other cruise ships of [Defendant] on the same deck." *Id.* at ¶¶ 16-17. Defendant also "knows the wet shiny floors are not an open and obvious hazardous condition for passengers." *Id.* at ¶ 18. "For those reasons [Defendant] trains its crew members to inspect and maintain its walkway floors on a regular basis" and requires its crew members to warn its passengers of [ ] dangerous condition[s]." *Id.* at ¶¶ 17-18. Indeed, Defendant has specific training and policies in place to address slippery substances in the subject area to ensure that crew members understand "the importance of inspecting and maintaining the flooring in a clean and dry condition as well as warning passengers of slippery foreign or transitory substance[s] on its floors." *Id.* at ¶ 23. Plaintiff points specifically to Defendant's "'Own Your Spill' program, two-minute trainers, [Defendant's] Carnival College Program as well as its HESS MS Procedures[,] which address slip and fall prevention, floor maintenance and provision of warnings regarding shipboard hazards." *Id.*

"Despite the fact that [Defendant] chose the slippery-when-wet stone flooring in areas subject to tracking in water and spills, [and was aware of the associated dangers, Defendant] or its employees did little or nothing to address these dangers." *Id.* at ¶ 19. Defendant or its crew failed to inspect or maintain the area of the incident and "allowed an extremely large wet area of water"

3

to be tracked in by passengers over a long period of time. *Id.* Defendant or the crew also failed to adequately warn Plaintiff of the dangerous condition and Defendant "poorly or unreasonably trained its crew" and "chose not to hire more cleaning staff to keep the slick, polished stone floors clean and dry" despite being aware of the likely danger. *Id.* By failing to keep the subject area "safe, clear, clean, and [in] dry condition," Defendant also failed to comply with industry standards and regulations mandating that safe escape routes, including the deck in question, remain clear and safe of potential hazards. *Id.* at ¶ 25.

Not only were the circumstances of the subject incident such that Defendant and the crew were aware or at least should have been aware of the dangerous conditions, but there were also prior similar incidents that put Defendant on constructive notice of the condition. *Id.* at ¶ 20. Plaintiff points to the following slip and fall incidents on the *Carnival Dream* and other Carnival-owned ships to establish substantial similarity:

1. Dennis Weiner was a passenger aboard the Carnival Valor on August 16, 2010. Weiner was injured when he slipped on liquid which had accumulated on the shiny floors near the coffee shop on the Promenade deck. Weiner filed a lawsuit as a result of this incident. *Weiner v. Carnival Cruise Lines*, Case No. 11-cv-22516.
2. Marjorie Cogburn was a passenger on Carnival Ecstasy on May 26, 2019. Marjorie Cogburn was injured when she slipped and fell on the unreasonably slippery interior flooring on the Promenade deck that had water and/or another liquid substance on it. Cogburn filed a lawsuit as a result of this incident. *Cogburn v. Carnival Corporation*, Case No. 1:20-cv-22166.

3. Earlene G -Starkes was a passenger on Carnival Magic on January 4, 2019. Earlene G-Starkes was injured when she slipped and fell on a wet substance that was on the marble and/or polished granite floor on the Promenade deck. Barksdale-Starkes filed a lawsuit as a result of this incident. *Barksdale-Starkes v. Carnival Corporation, et al.*, Case No. 1:20-cv-22204.

4. Nora Stricklan was a passenger on the Carnival Dream on January 18, 2020. Stricklan slipped, fell and was injured on the slippery flooring of the Lido Deck near Guys Burger Place. Stricklan filed a lawsuit as a result of this incident. Nora *Stricklan v. Carnival Corporation*, Case Number 1:20-cv-24887.

5. David Tutor was a passenger on the Carnival Dream on December 28, 2015. Tutor slipped, fell and was injured on the slippery floor of the Lido Deck in the Buffet area. *David Tutor v. Carnival Corporation*, Case Number 1:16-cv-23464-DPG.

6. Thomas Haynes was a passenger on the Carnival Glory on May 9, 2019. Haynes slipped, fell and was injured on a wet, foreign or transitory substance such as condensation on Deck 3. *Thomas Haynes v. Carnival Corporation*, Case Number 1:20-cv-21921-RNS.

7. *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090 (S.D. Fla. 2014) (court denied defendant's motion for summary judgment): Tammy Merideth was severely injured onboard the Carnival Magic on May 22, 2013. Merideth was eating breakfast at the self-service "Lido" restaurant on the aft deck of the M/S Carnival Magic, one of three similarly constructed "Dream Class" vessels operated by Carnival. As she stepped from a carpeted area to the tile floor, her foot lost traction, slipping out from underneath her and causing her to fracture her right knee and femur.

*Id.* at ¶ 20. Plaintiff further alleges that Defendant was on notice that the stone flooring area was negligently designed, given that Defendant "designs, selects the materials, and constructs its ships including the location of shipboard common areas, carpeted and non-carpeted flooring materials, and overall architecture." *Id.* at ¶ 24.

Defendant now seeks dismissal of the Complaint, arguing that: (1) Plaintiff's claims for Negligent Failure to Maintain (Count I), Negligent Failure to Warn (Count III), and the Negligent Design, Construction, and Selection of Materials (Count VI) should be dismissed because Plaintiff has failed to establish that Defendant had actual or constructive notice of the dangerous condition; (2) the claims for Negligent Failure to Warn—Direct Liability (Count III) and Negligent Failure to Warn—Vicarious Liability (Count IV) should be dismissed because the condition that caused Plaintiff's injuries was open and obvious; and (3) the claim for Negligent Training (Count V) should be dismissed because "Plaintiff does not allege a particular training program or policy that [Defendant] failed to properly implement." ECF No. [7].

As to Counts I, III, and VI, Plaintiff responds that Defendant overstates her burden at the motion to dismiss stage, and she has adequately cleared the low hurdle of plausibly alleging notice.

5

ECF No. [11]. As to Counts III and IV, Plaintiff contends that she need not affirmatively allege that the condition was not open and obvious, and that at this early juncture, Plaintiff has provided more than sufficient facts for a reasonable person to conclude that the danger of the accumulation of a clear liquid on a polished shined stone floor would not have been obvious to a person walking through the subject area. Finally, Plaintiff maintains that she has properly pled her negligent training, as her allegations are not conclusory, and there is no requirement that she name the specific policy or programs that were negligently implemented by Defendant that resulted in her injuries. *Id.* at 10.

## II. LEGAL STANDARD

### A. Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the

plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.

### B. General Maritime Law

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro,* 693 F.3d at 1336 (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

"To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro*, 693 F.3d at 1336). The

duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720.

### III. DISCUSSION

#### A. Counts I, III, VI—Notice

Defendant contends that Counts I, III, and VI should be dismissed because Plaintiff fails to allege that Defendant had actual or constructive notice of the allegedly hidden, dangerous condition, i.e., the puddle, that ultimately caused Plaintiff to slip and fall. ECF No. [7] at 4-5. Defendant begins by addressing constructive notice. While Plaintiff's Complaint "includes broad assertions that water was tracked into the subject area, that spills occur frequently, and that Carnival 'knows' accumulations of water may blend with its floors," Defendant contends that none of those vague or conclusory assertions establish that Defendant was on notice of the specific puddle at issue in this case. *Id.* at 5. Defendant argues that Plaintiff's allegation that the puddle existed for "probably an hour before her fall" is also too speculative to establish constructive notice because Plaintiff relies on an unreasonable inference that, because the puddle was large in size, it must have existed for a significant period of time. As for Plaintiff's allegations regarding seven prior slip and fall incidents, Defendant contends "only two of the cited incidents occurred on the same vessel, and even those did not involve the same area or conditions alleged here." *Id.* As such,

those incidents are not substantially similar enough to have placed Defendant on constructive notice of the dangerous condition at issue here.

Defendant further contends that Plaintiff's allegations concerning the staff's adherence to Defendant's policies and procedures are equally insufficient. According to Defendant, simply because it has policies and procedures requiring employees to inspect and maintain and place caution signs in wet areas does not "translate into notice of the specific condition that allegedly existed on June 28, 2024." *Id.* at 7. Defendant argues that Plaintiff's failure to identify "which safety standards or guidelines [Defendant] did not follow, or what relation they have to the alleged dangerous condition" is fatal to Plaintiff's claims in this case.

Defendant argues that Plaintiff's claims of actual notice are not only too vague, but the allegations also fail to establish that Defendant was aware the condition was dangerous. While Plaintiff alleges that one crewmember was mopping approximately 20-30 feet ahead of the spill, other crewmembers were "working nearby at the coffee shop and Bonsai Sushi Restaurant, and one crewmember "placed a caution sign after the Plaintiff fell," there is no allegation that any crewmember "saw the purported puddle of water or that the condition existed for a sufficient length of time to invite corrective measures." *Id.* at 6. Therefore, because the "mere presence of a crewmember without more" is insufficient to establish notice, Plaintiff's allegations are insufficient to plausibly state a claim under the circumstances. *Id.*

Defendant next turns to Plaintiff's negligent design allegations. Defendant argues that while it may have participated in the design and construction of the subject floor, those allegations do not establish that Defendant was on notice that the floor of the promenade deck would create an unreasonably unsafe condition. *See id.* at 8. Nor does the fact that Defendant is required to comply with certain industry regulations and standards impose additional obligations on Defendant

9

that would necessarily have put it on notice of the dangerous condition. *Id.* Accordingly, because none of these various theories of notice support Plaintiff's failure to maintain, failure to warn, and negligent design claims in Counts I, III, and VI, Defendant contends that those three claims should be dismissed.

Plaintiff responds that its allegations are neither conclusory nor speculative and establish the factual basis for concluding that Defendant was on notice of the dangerous condition at issue. Plaintiff points to its allegations that the large size of the wet area where the incident occurred indicates that the dangerous condition was present for an extended period, probably up to an hour. ECF No. [11] at 5. Plaintiff argues that the allegations establish that Defendant had more than sufficient time to locate the dangerous condition and either ameliorate the danger or warn Plaintiff of the danger prior to her accident. Plaintiff also relies on her allegations of seven prior substantially similar incidents to demonstrate that Defendant should have been on notice of the dangers associated with the highly trafficked polished stone floors across its fleet of ships.[2] Given those allegations, Plaintiff contends that "the Motion to Dismiss the Complaint based on failing to adequately plead actual or constructive notice should be denied." *Id.* at 6.

For a defendant to have a duty to warn or otherwise protect a passenger from danger, the cruise line must have "actual or constructive notice of the unsafe condition." *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322); *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021) ("[P]assenger cannot succeed on a maritime negligence claim against a shipowner unless that shipowner had actual or constructive notice of a risk-creating condition."). Therefore, if Plaintiff has not adequately pled notice, her negligent

---

[2] Additionally, Plaintiff argues that Defendant's training and procedures attempting to prevent slips and falls further show that Defendant was aware that there was a known risk of slippery substances accumulating and causing dangerous conditions. *See* ECF No. [11] at 7.

10

failure to maintain, negligent failure to warn, and negligent design claims in Counts I, III, and VI fail.

Plaintiff does not contend that she has alleged *actual* notice, and as such, the notice analysis will turn on whether she has alleged constructive notice. In a maritime slip and fall case, while the mere presence of water on a floor is insufficient to establish constructive notice, it is well settled that a maritime plaintiff can establish constructive notice by showing that "the defective condition existed for a sufficient period of time to invite corrective measures." *Neeper v. Carnival Corp.*, 754 F. Supp. 3d 1252, 1265 (S.D. Fla. 2024) (quoting *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)). With respect to the failure to maintain and failure to warn claims, Plaintiff has adequately established constructive notice by alleging that the dangerous condition (i.e., the large, clear puddle of water on the polished stone floor) was present on the floor for approximately one hour. *See Thomas v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1189, 1193 (S.D. Fla. 2016) ("[A] plaintiff may prove constructive notice if he shows that a dangerous condition existed on the floor for a sufficient length of time, which Florida courts have found to be 15-20 minutes."); *Marsh v. Celebrity Cruises, Inc.*, 2017 WL 6498107, at *3 (S.D. Fla. Dec. 13, 2017) (evidence that a liquid was present on the floor for at least thirty minutes before plaintiff's fall sufficient for a reasonable jury to find a defendant cruise ship operator had constructive knowledge of its existence).

Despite Defendant's contention that Plaintiff could not reasonably infer the length of time the puddle had been present based on the size of the puddle, the Court disagrees. The Complaint explains that the puddle formed over time by way of passengers tracking in water from the hot tub spas on the Lanai promenade to the area where the subject incident occurred. Plaintiff's inference that the large amount of water on the floor would have taken approximately an hour to pull together if it were dripping from passengers' clothing is a reasonable one. *See Hernandez v. Walmart Stores,*

11

*Inc.*, 2022 WL 1642814, at *6 (S.D. Fla. Apr. 28, 2022) ("[T]he source and size of the puddle does support the inference that the water was there (or the puddle formed) for such a length of time that [Defendant] should have noticed it."); *Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1322 (S.D. Fla. 2020) (finding that allegations that a four by two feet puddle formed over the course of 4-6 hours from a slow leak was sufficient to establish constructive notice); *Cosmo v. Carnival Corp.*, 272 F. Supp. 3d 1136, 1342 (S.D. Fla. 2017) (citing *Erickson v. Carnival Cruise Lines, Inc.*, 649 So. 2d 942, 943 (Fla. 3d DCA 1995) (noting that "constructive notice may be proved by circumstantial evidence such as the size of the puddle")). Therefore, Plaintiff's allegations are sufficient to plausibly establish constructive notice.

Because the allegations concerning the length of the time the puddle was present are alone sufficient to satisfy the notice requirement for Plaintiff's failure to maintain and failure to warn claims, the Court need not address Plaintiff's allegations concerning the prior slip and fall incidents. Therefore, with the failure to maintain and failure to warn claims resolved, the Court turns to Plaintiff's negligent design claim.

"Liability based on negligent design [ ] require[s] that Carnival 'actually created, participated in, or approved the alleged negligent design[.]'" *Johnson v. Carnival Corp.*, No. 19-cv-23167, 2021 WL 1341526, at *9 (S.D. Fla. Apr. 9, 2021) (quoting *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012)). In addition, a defendant can only be liable for negligent design "if it had actual or constructive notice of such hazardous condition." *Groves*, 463 F. App'x at 837. There is no dispute that Plaintiff has established that Defendant created, participated in, or approved the design of the polished stone flooring on deck 5. Therefore, the only question is whether Defendant had constructive notice that the design created a dangerous condition. The Court finds that Plaintiff's allegations are sufficient to establish notice of the

12

negligent design. While Defendant argues that Plaintiff must provide additional factual allegations to support that Defendant's participation in the design process would have put it on notice of the defective design, that proposition is not supported by the case law. As long as the plaintiff has established the defendant's substantial participation in the design process, courts have found the defendant had constructive notice of the negligent design at the motion to dismiss stage of the proceedings. *See Iacoli v. MSC Cruises, S.A.*, No. 24-CV-20082, 2024 WL 3509584, at *7 (S.D. Fla. July 23, 2024) ("[The plaintiff] claims that MSC was intimately involved in the design and construction of its own cruise ships—including the design and construction of the allegedly hazardous floors. If that's true—and, at this pleading stage of the case, we must assume it is—then [the plaintiff] would have established that MSC was on notice of the dangerous condition of its floors."); *Spotts*, 2024 WL 111921, at *6–7 (S.D. Fla. Jan. 10, 2024); *Canyes v. Carnival Corp.*, Case No. 22-cv-20858, 2022 WL 4270001, at *3–4 (S.D. Fla. Sept. 15, 2022); *Donaldson v. Carnival Corp.*, No. 20-23258-CIV, 2020 WL 6801883, at *4 (S.D. Fla. Nov. 19, 2020). Because Plaintiff has provided sufficient allegations regarding Defendant's participation in the design of the polished stone flooring where the incident occurred. As such, Plaintiff has established constructive notice necessary to plausibly allege a negligent design claim.

### B.  Negligent Failure to Warn (Counts III and IV)

Defendant argues that Plaintiff's negligent failure to warn claims must be dismissed because in order to adequately allege such a claim, a plaintiff must "plead that the alleged dangerous condition was not open and obvious." ECF No. [7] at 9. Despite the fact that Plaintiff alleges that "wet shiny floors are not an open and obvious hazardous condition for passengers," Defendant contends that "Plaintiff's Complaint contains no plausible factual allegations explaining how a large puddle of water on the floor . . . was not open and obvious" to Plaintiff. *Id.* According

to Defendant, the Complaint suggests the opposite, as it acknowledges that Plaintiff noticed another puddle of water, thereby undermining the notion that the alleged hazard was concealed. *Id.*

Plaintiff contends that, notwithstanding the fact that she failed to specifically allege that the dangerous condition was not open and obvious, dismissal is still inappropriate because the facts alleged establish that Plaintiff "did not know the extent of the dangerousness of the deck." ECF No. [11] at 8. Plaintiff points out that "the standard for determining whether a dangerous condition was open and obvious is 'whether the condition would be apparent to a reasonable person using their senses.'" *Id.* (quoting ECF No. [7] at 9). Plaintiff argues her allegations satisfy this standard as she alleged that "Defendant 'chose to install a slippery-when-wet polished stone flooring,'" and that Defendant knew that this type of flooring would lead to the "accumulation of wet areas" that would "blend in with the floors of its interior walkways." *Id.* (quoting ECF No. [1] at ¶ 18). Plaintiff also points to her allegation that Defendant knew "that passengers may not know how slippery its floors [could] be, let alone with [a] large accumulation of water," and that Defendant knew "the wet shiny floors [were] not an open and obvious hazardous condition for passengers." *Id.* Plaintiff contends that given these factual allegations, she has established that a "reasonable person may not [have] notice[d] [the] accumulation of water or other clear liquid against the shine of [the] polished stone floor." Accordingly, she maintains that the Complaint adequately alleges facts demonstrating that the dangerous condition was not open and obvious. *Id.*

Notwithstanding Plaintiff's argument to the contrary, "Plaintiff is required to allege that the danger was not open and obvious" to her. *Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1264 (S.D. Fla. 2022) (citing *Spall v. NCL (Bah.) Ltd.*, 275 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (finding that because the plaintiff failed to allege that any danger was not open and obvious to the

14

plaintiffs, the plaintiffs had failed to state a plausible negligent failure to warn claim); *Fawcett v. Carnival Corp.*, 682 F. Supp. 3d 1106, 1112 (S.D. Fla. 2023) ("While 'the question of whether a danger is open and obvious relies on a heavily factual inquiry which is inappropriate' at the motion-to-dismiss stage, [ ] a plaintiff is still 'required to allege that the danger was not open and obvious' to state a negligent-failure-to-warn claim.") (internal citations omitted). Here, while Plaintiff has indeed alleged facts that establish that, in general, a wet, polished stone floor would likely not be open and obvious to a reasonable person, Plaintiff fails to allege that the dangerous condition was not open and obvious to *her*. *See Spall*, 275 F. Supp. 3d at 1349. Indeed, Plaintiff's allegations seem to undermine the idea that she was not aware of the open and obvious danger of the wet floor, given that she had previously noticed a wet puddle on the stone polished floor just moments prior to the subject incident. Accordingly, because Plaintiff has failed to plausibly allege that the danger was not open and obvious to her, the Court must dismiss both Count III and Count IV.[3]

### C. Negligent Training (Count V)

Lastly, Defendant argues that the negligent training claim (Count V) must be dismissed because "general maritime law does not recognize a claim for negligent training based solely on alleged deficiencies in a company's general policies, staffing levels, or operational decisions." ECF No. [7] at 10. Rather, Defendant contends that a plaintiff must point to a particular training program or policy that the defendant failed to properly implement. Here, although Plaintiff identifies several training programs and policies Defendant has regarding how to handle slippery

---

[3] While Plaintiff requests that she be granted leave to amend if the Court finds any of her claims insufficient, ECF No. [11] at 12, a request for leave is not properly raised in a plaintiff's response brief. *See Julien v. Georgia Bd. of Dentistry*, No. 1:17-CV-04045, 2020 WL 10485918, at *8 (N.D. Ga. Feb. 12, 2020) ("The Eleventh Circuit 'precedent is clear: the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment.'") (quoting *Burgess v. Religious Tech. Ctr. Inc.*, 600 F. App'x 657, 666 (11th Cir. 2015)); *S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 791 F. App'x 106, 113 (11th Cir. 2019) (finding that a footnote in a response brief was not a proper motion to amend).

15

substances on its ship, Defendant argues there are no non-conclusory allegations establishing "how [Defendant] was negligent in implementing any specific training programs." *Id.* at 11.  According to Defendant, simply because there was an incident does not necessarily show that Defendant negligently implemented its training programs, and as such, Plaintiff has failed to adequately allege a negligent training claim. *Id.*

Plaintiff responds that her negligent training claim "comports with the law in that it 1) alleges that [Defendant] had specific training programs and policies that it failed to implement or operate, and 2) provides a list identifying how and why [Defendant] negligently implemented or operated the programs." ECF [11] at 10. Accordingly, Plaintiff contends her negligent training claim satisfies the plausibility standard necessary to overcome a motion to dismiss.

Negligent training is a "recognized dut[y] under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021); *Gutman v. Quest Diagnostics Clinical Laboratories, Inc.*, 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010). Therefore, in order for a plaintiff "to state a claim for negligent training, he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11h Cir. 2005).  It is not enough for the plaintiff to merely challenge the content of the program or to simply "identify that certain training programs exist and [ ] allege in a conclusory manner that Defendant was negligent in operating such training programs." *Mercado*, 407 F.3d at 1162; *Walsh v. Carnival Corp.*, Case No. 20-cv-21454, 2020 WL 10936272, at *5 (S.D. Fla. Jul. 7, 2020). The plaintiff must provide factual allegations that establish "how Defendant was negligent in implementing or operating its training programs."

16

*Walsh*, 2020 WL 10936272, at *5; *see also Watts, v. City of Hollywood*, Fla. 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (concluding that to state a negligent training claim, the plaintiff "must identify a training program or policy and explain specifically how the [defendant] was negligent in implementing it").

Here, Plaintiff has adequately alleged a negligent training claim. Plaintiff has satisfied the initial step by identifying the specific employee training programs Defendant attempted to implement to adequately warn passengers of wet and slippery conditions aboard the ship and to ensure flooring remained in a clean and dry condition. Specifically, Plaintiff identified the following training programs: (1) the "Own Your Spill" Program, (2) the two-minute trainers, (3) the Carnival College Program, and (4) the HESS MS procedures. ECF No. [1] at 9. Plaintiff has also shown how Defendant failed to implement those training programs. Plaintiff alleges that Defendant negligently implemented those training programs by failing to properly:

> (a) teach shipboard crew how to inspect for puddles; (b) teach shipboard crew how frequently to inspect for puddles; (c) teach crew how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach shipboard crew how to warn guests about wet slippery floors; (f) teach shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach shipboard crew how to reasonably clean and dry floors in a safe condition; (h) each shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program; (k) teach shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach shipboard crew

> to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.

ECF No. [1] at ¶ 6. These allegations specifically address the purported deficiencies in Defendant's training programs. While Defendant argues that more detail is required about the specific programs and what specific aspect of the implementation of a particular portion of the program was deficient, the Court disagrees. As the courts in *Spotts* and *Perera* found, where a plaintiff has not been given a chance to conduct discovery concerning Defendant's training programs, the Court cannot imagine requiring Plaintiff to provide more detail to plausibly allege a negligent training claim. *Spotts v. Carnival Corp.*, No. 23-cv-22906, 2024 WL 111921, at *5 (S.D. Fla. Jan. 10, 2024); *Perera v. Carnival Corp.*, No. 1:23-24663, 2024 WL 2115489, at *7 (S.D. Fla. Apr. 24, 2024). Accordingly, because Plaintiff has identified the specific programs, the purported deficiencies in implementing those programs, and how the negligent implementation caused her injuries,[4] Defendant's request to dismiss Count V is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [7]**, is **GRANTED in part and DENIED in part**.

2. **Count III and Count IV** of the Complaint are **DISMISSED**.

3. Defendant shall file an Answer to Plaintiff's Complaint no later than **November 11, 2025**.

---

[4] Plaintiff alleges that because those crewmembers responsible for warning, cleaning, drying, inspecting, and/or maintaining the area where the incident occurred were not properly trained, they failed to adequately warn Plaintiff or otherwise properly clean or dry the area, thereby causing Plaintiff's injuries. Accordingly, Plaintiff has adequately alleged the causation element necessary to sustain her negligent training claim. *See* ECF No. [1] at ¶¶ 67-68.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 28, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record